AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)     Approved and Authorized Date: s/ Stephen C. Hoch 4/22/2024

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information Associated with Facebook User ID<br>DUMB5EVER That Is Stored at Premises Controlled by<br>Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)    Case No. M-24- 370 -STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute, Distribution and/or Manufacture of a Controlled Substance. |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brook J. Wison, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Apr 23, 2024**

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

AUSA: Stephen C. Hoch

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT DUMB5EVER THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. M-24-370  -STE<br><br>Filed Under Seal |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Brook J. Wilson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant for information associated with the Facebook account containing the following user identification – Dumb5ever (**Target Account**) – an account which is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. (Meta), a company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in **Attachment A**.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and

other information in its possession, pertaining to the subscriber or customer associated with the user identification Dumb5ever.

2.     I, Brook J. Wilson, am a Special Agent with the Drug Enforcement Administration (DEA).  I have been a Special Agent since October 2014, having previously worked as a United States Border Patrol Agent from 2006 until 20014.  After successfully completing the DEA training academy at Quantico, Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona.  In October 2019 I was transferred to the Oklahoma City District Office, where I am currently assigned to the Tactical Diversion Squad.  As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, violations of the Controlled Substances Act (Title 21, United States Code, Sections 801, et seq.).

3.     As part of my duties as a Special Agent, I investigate criminal violations relating to trafficking in illegal narcotics.  As a result of my training and experience, including information provided by other federal agents with applicable knowledge, I am familiar with the tactics, methods, and techniques used by drug traffickers.  As part of my job, I have conducted numerous investigations involving the use of the Internet, email, and social media to further criminal activity.  I have participated in the execution of

2

numerous federal search warrants involving various types of evidence and property.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 (Possession with Intent to Distribute, Distribution, and/or Manufacture of a Controlled Substance) have been committed by **Patricia MORRIS,** as they relate to the overdose death of Timithy McFarland.   There is also probable cause to search the information described in **Attachment A** for evidence of these crimes, and contraband or fruits of these crimes, as described in **Attachment B.**

## PROBABLE CAUSE

6.     On February 8, 2024, at approximately 9:06 p.m., officers with the Midwest City Police Department (MCPD) were dispatched to 640 E. Bouse Dr., Midwest City, Oklahoma 73110 (located within the Western District of Oklahoma) in reference to a suspected deceased individual. Upon

3

arrival, officers located Timithy McFarland lying in the living room surrounded by indicia of fentanyl use, including tin foil, a long metal straw, a small plastic baggie,[1] and a single dose of Narcan. Shortly after encountering McFarland, law enforcement determined that he was deceased. MCPD officers also recovered a cellular telephone, which belonged to McFarland, near McFarland's body.

7.      In March 2024, Drug Enforcement Administration (DEA) personnel offered to assist MCPD with its investigation. On March 27, 2024, custody of the evidence collected from 640 E. Bouse Dr. was transferred from MCPD to DEA. DEA agents and officers subsequently contacted McFarland's mother, Tracey McFarland. She stated that, on the evening of February 6, 2024, McFarland was at her residence with her, her husband, and McFarland's juvenile daughter. According to Tracey McFarland, at approximately 3:00 a.m. on February 7, 2024, McFarland hurriedly left the residence and did not return.

8.      Tracey McFarland further stated that, before McFarland left the residence, his cellular telephone was ringing multiple times to indicate

---

[1] The residual powder found in the plastic baggie tested presumptively positive for fentanyl.

4

incoming messages.  She provided law enforcement with the passcode for McFarland's cellular telephone and consented to a search of the device.

9.    While conducting a forensic examination on McFarland's cellular telephone, law enforcement reviewed a Facebook conversation between McFarland (utilizing Facebook account username "Timithy McFarland," with an associated Facebook user identification number of 100000088642158) and Facebook account username "Trisha Jayne Thompson," with an associated user identification of Dumb5ever, which matches the user identification of the **Target Account**.  The following conversation began at approximately 8:33 p.m. on February 6, 2024, and ended at approximately 3:49 a.m. on February 7, 2024:

| | |
|---|---|
| **McFARLAND:** (8:33 p.m.) | Idk you don't want to help me could you at least connect me to your plug |
| **McFARLAND:** (10:01 p.m.) | *Audio call fails to connect* Hey I really need some fent Could you meet up with me or connect me with your plug |
| **McFARLAND:** (10:04 p.m.) | *Audio call fails to connect* Trish? What do I need to do for you to help me out tonight lol |
| **THOMPSON:** (12:28 a.m.) | Yo |
| **THOMPSON:** (12:30 a.m.) | *Audio call connected* |

5

**McFARLAND:**   Send me your address I'll come get you
**(12:30 a.m.)**

**McFARLAND:**   *Audio call fails to connect*
**(12:49 p.m.)**   We're you able to get ahold of your plug?

**McFARLAND:**   *Audio call fails to connect*
**(12:59 a.m.)**

**THOMPSON:**   *Audio call connected*
**(1:26 a.m.)**

**McFARLAND:**   I 40an Douglas?
**(1:26 a.m.)**

**THOMPSON:**   Yea
**(1:26 a.m.)**

**THOMPSON:**   *Audio call connected*
**(1:32 a.m.)**

**McFARLAND:**   Eh where'd you go?
**(2:21 a.m.)**

**McFARLAND:**   Do you got any fentanyl?
**(2:36 a.m.)**

**McFARLAND:**   Thanks, let me know if you ever want to just hang
**(3:49 a.m.)**   out
               I still think your fine and would love to hit sometime
               lol

10.     Further investigation into McFarland's cellular telephone revealed that McFarland sent a $10.00 payment using CashApp on February 7, 2024, at approximately 2:54 a.m. The payment was sent to a CashApp account with username "Trisha Thompson" and user ID $PayTrishnow. I

6

believe that this CashApp account belongs to an individual named **Patricia MORRIS** based on my personal observations,[2] as well as statements made by **MORRIS** to law enforcement.[3]  In addition to the February 7, 2024 payment, McFarland sent two prior payments—each for $20.00—to CashApp user ID $PayTrishnow on February 2, 2024.

11.    Based on my training and experience and the facts set forth in this affidavit, I believe that there is sufficient evidence that there is probable cause to believe that **Patricia MORRIS,** the owner of the **Target Account,** has committed violations of 21 U.S.C. § 841, as these violations relate to the overdose death of Timithy McFarland.

12.    On April 15, 2024, Meta was served with a preservation letter in order to preserve the stored data related to the **Target Account.**

---

[2] I believe **Patricia MORRIS** is the same person pictured in the profile photo associated with CashApp user ID $PayTrishnow.

[3] On February 6, 2024, law enforcement interviewed **MORRIS** in reference to a separate investigation.  During the interview, **MORRIS** informed law enforcement that she often utilizes two last names—**MORRIS** and Thompson—and that she often shortens her first name to "Trisha."

## META PLATFORMS, INC.[4]

13.    Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

14.    Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.    Each Facebook user is assigned a user identification number and can choose a username.

15.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or

---

[4] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to

9

videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

18.    Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

19.    Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on

10

their own profiles; such comments are typically associated with a specific posting or item on the profile.

20.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

22.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

11

24.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

25.    In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

26.    Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform.  For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

27.    Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

28.    Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).    In some cases, Facebook users may

12

communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta

13

logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30.    Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of **Attachment B**.  Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review that information to locate the items described in Section II of **Attachment B**.

### CONCLUSION

32.    Based on the forgoing, I request that the Court issue the proposed search warrant.

33.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C.

15

§ 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, this Court is a "district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

Respectfully submitted,

Brook J. Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn on this **23rd** day of April, 2024.

SHON T. ERWIN
United States Magistrate Judge

16

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user identification Dumb5ever (**Target Account**) that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be disclosed by Meta Platforms, Inc. (Meta)

To the extent that the information described in **Attachment A** is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for the Facebook Account Identifiers listed in **Attachment A**:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities January 1, 2024, through February 15, 2024;

(c)     All photos and videos uploaded by that account and all photos and videos uploaded by any user that have that user tagged in them

from January 1, 2024, through February 15, 2024, including Exchangeable Image File (EXIF) data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with the **Target Account**, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)    All other records and contents of communications and messages made or received by the **Target Account** from January 1, 2024, through February 15, 2024, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

2

(g)  All "check ins" and other location information;

(h)  All IP logs, including all records of the IP addresses that logged into the **Target Account**;

(i)  All records of the **Target Account's** usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)  All information about the Facebook pages that the **Target Account** is or was a "fan" of;

(k)  All past and present lists of friends created by the **Target Account**;

(l)  All records of Facebook searches performed by the **Target Account** from January 1, 2024, through February 15, 2024;

(m)  All information about the user's access and use of Facebook Marketplace;

(n)  The types of service utilized by the user;

(o)  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all

records showing which Facebook users have been blocked by the account;

(q)   Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)   All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 involving a user utilizing the Facebook user identification Dumb5ever account from January 1, 2024, through February 15, 2024, as listed in **Attachment A,** including information pertaining to the following matters:

(a)   Communications between the **Target Account** and others pertaining to the acquisition, purchase, movement, payment, location, and types of unlawful controlled substances and the collection of profits therefrom;

4

(b)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the DEA may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.